IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KENYON WASHINGTON,**<br><br>　　　　**Plaintiff,**<br><br>v.<br><br>**C/O WELGE,**<br>**C/O PRATT,**<br>**C/O HARRISON,**<br>**ZACKARY HART,**<br>**C/O KITCHEN,**<br>**ANGELA, and**<br>**C/O SLAUGHTER,**<br><br>　　　　**Defendants.** | Case No. 25-cv-00385-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

　　　　Plaintiff Kenyon Washington, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

### THE COMPLAINT[1]

　　　　In the Complaint, Plaintiff alleges that on February 15, 2024, while at Menard Correctional

---

[1] Because it appears that Plaintiff is relying on statements made in the Complaint (Doc. 1) and the motion for preliminary injunction (Doc. 2) in asserting his claims, the Court is construing the allegations in these filings together. *See Otis v. Demarass,* 886 F.3d 639, 644 (7th Cir. 2018).

Center (Menard), he ate chicken that was not thoroughly cooked. (Doc. 1, p. 7). He states that the chicken contained a parasite or some kind of bug, and he immediately became sick. (Doc. 1, p. 7; Doc. 2, p. 1). Plaintiff was taken to the health care unit by Correctional Officers Pratt and Welge. (Doc. 1, p. 7). At the health care unit, Plaintiff was not physically examined but seen by a mental health specialist. The mental health specialist determined that Plaintiff "was having a nightmare" and that he would be "okay." (*Id.*). Plaintiff was then escorted to segregation and placed on "suicide watch" for thirty days, even though he never expressed feeling suicidal or homicidal. (Doc. 1, p. 7; Doc. 2, p. 2). Plaintiff states that he remained on suicide watch without ever receiving medical attention. (*Id.*).

While on suicide watch, Plaintiff began experiencing burning and sharp pains in his groin and intestinal areas. (Doc. 1, p. 7). These symptoms increased as time passed. Plaintiff eventually began coughing up blood. He was unable to eat, sleep, or have bowel movements. Numerous times, Plaintiff requested medical attention verbally and by sending requests slips but "to no avail." When he did attempt to eat, Plaintiff states that he would feel a painful movement in his intestines that at times was so intense that it would cause him to "drop to [his] knees" and cough up blood and phlegm. (*Id.*; Doc. 2, p. 3). Plaintiff spoke to Pratt and Welge and requested medical assistance. (Doc. 1, p. 8). Pratt and Welge told Plaintiff that they were informed by medical staff that there was nothing medically that could be done for him. (*Id.*; Doc. 2, p. 3).

On March 18, 2024, after submitting numerous complaints, Plaintiff was finally sent to the emergency room at Chester Hospital. (Doc. 1, p. 8; Doc. 2, p. 3). Plaintiff was told by a triage nurse that he might have the flu. Medical tests were not performed, and Plaintiff was returned to Menard. (*Id.*).

Back at Menard, Plaintiff states he did not receive adequate medical care. Periodically a

nurse would ask him if he was "okay?" (Doc. 1, p. 8). When he would try and explain his symptoms, the nurses were unprofessional and would tell him that his issues were not their problem. On April 11, 2024, while housed in East Cell house, Plaintiff began to lose control of his breathing. (*Id.*; Doc. 2, p. 4). He called for a medical technician, and Sergeant Harrison came to his cell. (Doc. 2, p. 4). Plaintiff explained that he was having difficulty breathing, and Harrison "did nothing." (*Id.*). Later, Correctional Officer Slaughter came to his cell, and Plaintiff told Slaughter that he was having difficulty breathing and explained his ongoing medical problems. Slaughter also did not provide any assistance. (*Id.*).

Plaintiff states that he resorted to "drastic measures" to receive medical care. (Doc. 1, p. 8-9). He swallowed two nail clippers and a cable cord splitter and attempted to set himself on fire. (Doc. 2, p. 4). After the fire was extinguished, Plaintiff was taken back to segregation and placed in a suicide watch cell. Staff took pictures of the burns on his hand but did not take pictures of the burn injuries on his back, arm, and leg. Plaintiff states that a mental health staff member came to speak to him, but he was not provided any medical care for his physical injuries or ongoing intestinal symptoms. (*Id.*). Plaintiff remained on suicide watch for two months, where he continued to be erroneously treated as though he was suffering from a mental rather than a physical illness. (Doc. 1, p. 9).

At some point, staff members became "fed up" with Plaintiff's "constant requests and cries for medical help." (Doc. 1, p. 9). He states that he was taken out of his suicide watch cell and physically beaten by Correctional Officers Zackery Hart[2] and Kitchen. (Doc. 2, p. 5). During the assault, he lost consciousness because the parasite/bug he had previously ingested blocked his

---

[2] In the case caption, this individual is identified as "Zackery Hart," and in the body of the Complaint and the motion for preliminary injunction as "Zackery Heart." (Doc. 1, p. 2, 9; Doc. 2, p. 5). The Court will use the spelling used in the case caption when referring to this defendant.

windpipe, he sustained injuries to his vision and hearing, and his pointer finger was broken. (Doc. 1, p. 9). Following the incident, Plaintiff was thrown back into the suicide watch cell without medical treatment. (*Id.*).

On May 10, 2024, after continuing to suffer from the same intestinal pains and symptoms, Plaintiff was again sent to the hospital. (Doc. 1, p. 8; Doc. 2, p. 3). A doctor ran tests, and Plaintiff was diagnosed as having a tapeworm. (Doc. 1, p. 8). He was given fluids through an IV and was returned to Menard. (*Id.*).

Plaintiff has since been transferred from Menard to Pontiac Correctional Center. He claims that he is still infected with the tapeworm, and he continues to suffer from the injuries sustained from the staff assault. (*Id.* at p. 9). He states that he has attempted to pull the tapeworm out of his throat himself and describes it as "long, gummy like, thick, coagulated, white/blackish." (*Id.*).

**PRELIMINARY DISMISSALS**

The Court will dismiss all claims against Defendant Angela, who is described as a registered nurse, as there are no allegations against her in the body of the Complaint. (Doc. 1, p. 2).

To the extent Plaintiff is intending to sue "registered nurses," any claims against this group of individuals are also dismissed. (*See* Doc. 1, p. 2). Throughout the Complaint and motion for preliminary injunction, Plaintiff mentions speaking to unknown nurses, but he does not identify them individually in the case caption by name or John Doe designation. After listing Angela as a defendant, he writes "Registered Nurses." (Doc. 1, p. 2). Merely invoking the name of a potential defendant in the case caption or asserting that a group of defendants violated his constitutional rights is not sufficient to state a claim against any one individual. *See Collins v. Kibort,* 143 F.3d 331, 334 (7th Cir. 1998); *Brooks v. Ross,* 578 F.3d 574, 580 (7th Cir. 2009). Without more

specificity, it is not clear who he is intending to sue and for what conduct. A plaintiff is required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the Complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Because the individual unknown nurses are not properly identified in the case caption and the Complaint, the intended claims against them are dismissed.

## DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

> Count 1:   Eighth Amendment claim against Welge, Pratt, Zackery Hart, and Kitchen for deliberate indifference to Plaintiff's intestinal illness and associated symptoms.
>
> Count 2:   Eighth Amendment claim against Harrison and Slaughter for deliberate indifference to Plaintiff's difficulty breathing on April 11, 2024, and ongoing intestinal illness and associated symptoms.
>
> Count 3:   Eighth Amendment claim against Zackery Hart and Kitchen for the use of excessive force against Plaintiff.
>
> Count 4:   Eighth Amendment claim against Zackery Hart and Kitchen for denying Plaintiff medical care for the injuries sustained by the use of excessive force.
>
> Count 5:   First Amendment claim against Zackery Hart and Kitchen for retaliating against Plaintiff for requesting medical assistance.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[3] pleading standard.**

### Counts 1 and 2: Eighth Amendment Deliberate Indifference

---

[3] *Bell Atlantic Corp.,* 550 U.S. at 570.

The Eighth Amendment prohibits the deliberate indifference to a prisoner's "serious medical needs," as deliberate indifference "constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (internal quotations omitted). To successfully state an Eighth Amendment claim of deliberate indifference, a plaintiff must plead that the defendant knew of a serious risk of harm and consciously disregarded it. *See Giles v. Godinez*, 914 F. 3d 1040, 1049 (7th Cir. 2019).

*Count 1*

Plaintiff claims that after he ate uncooked chicken and a parasite or bug, he alerted Pratt and Welge, and they took him to the health care unit. (Doc. 1, p. 7; Doc. 2, p. 2). He further states that after he was placed on suicide watch, at his request, Pratt and Welge notified medical staff on more than one occasion that he was in need of medical care and continued to experience adverse symptoms. Pratt and Welge were told by medical staff that there was nothing medically that could be done for Plaintiff. (Doc. 1, p. 8; Doc. 2, p. 3). The conduct on the part of Pratt and Welge, as pled, does not amount to deliberate indifference. Pratt and Welge promptly took Plaintiff to the health care unit when he became ill on February 15, 2024, and subsequently consulted with medical personnel when requested. As nonmedical staff, Pratt and Welge are "entitled to rely on the judgment of medical professionals treating" Plaintiff. *Rasho v. Elyea,* 856 F. 3d 469, 478 (7th Cir. 2017). Thus, they did not respond to Plaintiff with deliberate indifference, and Count 1 is dismissed against them.

Count 1 will proceed against Hart and Kitchen. Plaintiff asserts that after he was placed on suicide watch for a second time, in April 2024, Hart and Kitchen ignored his constant requests for medical care. (Doc. 1, p. 9).

*Count 2*

Count 2 will proceed against Harrison and Slaughter. Plaintiff states that informed Harrison and Slaughter that he was having difficulty breathing on April 11, 2024, and his ongoing medical problems and both Defendants did nothing to assist him. (Doc. 2, p. 4). These facts are sufficient to state a claim for deliberate indifference.

### Counts 3 and 4

Counts 3 and 4 will proceed against Hart and Kitchen for the use of excessive force against Plaintiff and for then denying him medical care for his injuries. *See Cooper v. Casey,* 97 F. 3d 914, 917 (7th Cir. 1996).

### Count 5

Count 5 will proceed against Hart and Kitchen. *See, e.g., Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012).

### MOTION FOR PRELIMINARY INJUNCTION

In the Complaint, Plaintiff seeks (1) a temporary restraining order directing Defendants to stay 1,000 feet away from him and refrain from retaliation; and (2) a preliminary injunction directing IDOC employees to provide him adequate medical care immediately for the untreated tapeworm, vision, hearing, and finger. (Doc. 1, p. 10, 11). Along with the Complaint, Plaintiff filed a motion for preliminary injunction. (Doc. 2). In the motion, Plaintiff requests an injunction requiring Defendants to provide medical treatment for his untreated tapeworm, right pointer finger injured by the use of excessive force, and burns.

Plaintiff is no longer housed at Menard and was transferred to Pontiac Correctional Center (Pontiac) sometime prior to initiating this lawsuit. The remaining defendants, Hart, Kitchen, Harrison, and Slaughter, according to the Complaint, are employees of Menard. Thus, they are no longer are in a position to be able to retaliate against Plaintiff making his request for a temporary

restraining order moot. *See Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004) ("a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot" (citing *Higgason v. Farley,* 83 F. 3d 807 (7th Cir. 1995)). The request for a temporary restraining order is **DENIED**.

As for his requests for a preliminary injunction ordering that he be provided medical care at Pontiac, the request and motion are also **DENIED**. A preliminary injunction "is appropriate only if it seeks relief of the same character sought in the underlying suit, and deals with a matter presented in that underlying suit." *Daniels v. Dumsdorff*, No. 19-cv-00394, 2019 WL 3322344, at *1 (S.D. Ill. July 24, 2019) (quoting *Hallows v. Madison Cty. Jail*, No. 18-cv-881-JPG, 2018 WL 2118082, at *6 (S.D. Ill. May 8, 2018) (internal citations omitted)). *See also Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *Bird v. Barr*, 19-cv-1581 (KBJ), 2020 WL 4219784, at *2 (D.C. Cir. July 23, 2020) (noting that a court "only possesses the power to afford preliminary injunctive relief that is related to the claims at issue in the litigation"). In this case, Plaintiff is proceeding on claims against Defendants Hart and Kitchen for retaliation and denial of medical care when Plaintiff was held in suicide watch at Menard in 2024. The Court does not have jurisdiction to compel or enjoin the current conduct of individual staff members at Pontiac, who are not parties to this case.

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a motion asking the Court to recruit counsel on his behalf. (Doc. 4). Pursuant to 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." When faced with a motion for recruitment of counsel the Court applies a two part test: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff

appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Plaintiff states that in spite of his efforts to find an attorney himself, "[t]hey're not taking civil cases currently or have high case load already." (Doc. 4, p. 1). He does not, however, describe what he has done to try to obtain an attorney to take this case. Thus, Plaintiff has failed to meet his threshold burden of demonstrating that he made a "reasonable attempt" to secure counsel, and the motion is **DENIED**. *See Santiago v. Walls,* 599 F.3d 749, 760 (7th Cir. 2010). Should Plaintiff choose to move for recruitment of counsel at a later date, the Court directs Plaintiff to include in the motion the names and address of at least three attorneys he has contacted, and if available, attach the letters from the attorneys who declined representation.

## FILING FEE

Plaintiff has sought leave to proceed in forma pauperis (IFP) in this case but has failed to provide the necessary prisoner trust fund account information as required by the Prison Litigation Reform Act (PLRA). (*See* Doc. 3). Plaintiff was previously ordered to provide the Clerk of Court with a certification completed by the trust fund officer at Pontiac and a copy of his trust fund account statement for the period of September 24, 2024, through March 24, 2025, no later than May 23, 2025. (Doc. 7). Even though this case survives screening pursuant to Section 1915A, Plaintiff must comply with the Court's Order at Doc. 7 concerning his IFP motion and provision of his trust fund account statement and certification, or this action shall be subject to dismissal for failure to comply with an order of the Court. *See* FED. R. CIV. P. 41(b).

## DISPOSITION

For the reasons set forth above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** shall proceed against Hart and Kitchen but is **DISMISSED without prejudice** as to Welge and Pratty. **COUNT 2** will proceed against Harrison and Slaughter.

**COUNTS 3, 4,** and **5** shall proceed against Hart and Kitchen. Because there are no surviving claims against Welge, Pratt, and Angela, the Clerk of Court **SHALL TERMINATE** these individuals as parties on the docket.

The Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for Hart, Kitchen, Harrison, and Slaughter the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment. If the defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, the Defendant needs only to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk

of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 9, 2025**

*s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.