**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **KENYON WASHINGTON,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DERRICK HARRISON, ZACHARY HART, and DALTON KITCHEN,**<br><br>**Defendants.** | **Case No. 25-cv-00385-SPM** |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Kenyon Washington, an inmate of the Illinois Department of Corrections (IDOC), initiated this action pursuant to 42 U.S.C. § 1983 for violations his constitutional rights. In the Complaint (Doc. 1), Plaintiff asserts that he continues to be denied medical treatment for gastrointestinal issues that began after he swallowed a tape worm or some kind of parasite. He also claims that he was subsequently subjected to excessive force and mistreatment by staff because he repeatedly requested medical care. On November 6, 2025, Defendants Harrison, Hart, and Kitchen filed a Motion for Summary Judgment seeking dismissal of this case based on Plaintiff's failure to exhaust his administrative remedies prior to initiating this lawsuit, which is required by the Prison Litigation Reform Act, 42 U.S.C. §1997(e). (Doc. 39). In response, Plaintiff filed a letter with the Court and a Motion for Status. (Doc. 41, 42). The Court construes these filings as Plaintiff's response in opposition to the Motion for Summary Judgment and a supplement to his response. (*See* Doc. 43). The Motion for Summary Judgment is now fully briefed and before the Court.

## ALLEGATIONS IN THE COMPLAINT

In the Complaint (Doc. 1), Plaintiff alleges that in February 2024, while at Menard

Correctional Center (Menard), he contracted a tapeworm from eating chicken that was not thoroughly cooked, and he became ill. Although he was taken to the healthcare unit, he claims he did not actually receive medical care. According to Plaintiff, a mental health specialist determined that Plaintiff "was having a nightmare," and he was escorted to segregation and placed on "suicide watch"[1] for thirty days.

While on suicide watch, Plaintiff continued to suffer from gastrointestinal distress, which he attributes to the untreated tapeworm. He had sharp pains in his groin and intestinal areas, he coughed up blood, and he was unable to eat, sleep, or have bowel movements. On March 18, 2024, after submitting numerous complaints, Plaintiff states that he was finally sent to the emergency room at Chester Hospital. Plaintiff asserts that he was told by a triage nurse that he might have the flu. Medical tests were not performed, and Plaintiff was returned to Menard still experiencing intestinal pain.

After his hospital visit, Plaintiff asserts that he continued to be denied medical treatment. On April 11, 2024, while housed in East Cell House, Plaintiff began to lose control of his breathing. He alleges that he called for a medical technician, and Defendant Harrison came to his cell. Plaintiff explained that he was having difficulty breathing, but Harrison did not assist him or ensure he received medical treatment.

Plaintiff asserts that he then began to engage in self-harm in order to obtain medical attention for his intestinal issues. However, he still did not receive needed medical care, and at some point, Plaintiff was placed on suicide watch in segregation for a second time. During this time in segregation, he alleges he was denied medical care for his intestinal symptoms by Defendants Hart and Kitchen. He asserts that because the correctional officers became irritated

[1] Plaintiff appears to use "suicide watch" and "crisis watch" interchangeably. (*See* Doc. 1, p. 7; Doc. 39-2, p. 3).

and "fed up" with his constant requests for medical care, he was taken out of his suicide watch cell and physically beaten by correctional officers, including Hart and Kitchen. Plaintiff alleges that he was placed back in his suicide watch cell and did not receive medical care for the injuries sustained from the officer assault.

Following a merit review of the Complaint pursuant to 28 U.S.C. § 1915A (Doc. 9), Plaintiff is currently proceeding on the following claims:

**Count 1:** Eighth Amendment claim against Hart and Kitchen for deliberate indifference to Plaintiff's intestinal illness and associated symptoms.

**Count 2:** Eighth Amendment claim against Harrison for deliberate indifference to Plaintiff's difficulty breathing on April 11, 2024, and ongoing intestinal illness and associated symptoms.

**Count 3:** Eighth Amendment claim against Hart and Kitchen for the use of excessive force against Plaintiff.

**Count 4:** Eighth Amendment claim against Hart and Kitchen for denying Plaintiff medical care for the injuries sustained by the use of excessive force.

**Count 5:** First Amendment claim against Hart and Kitchen for retaliating against Plaintiff for requesting medical assistance.

## LEGAL STANDARDS

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party is entitled to judgment as a matter of law when the pleadings, answers to interrogatories, depositions, and admissions, along with affidavits, show that there is no genuine issue of material fact. FED. R. CIV. P. 56(c). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004).

Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (a "judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008);[2] *Roberts v. Neal*, 745 F.3d 232, 236 (7th Cir. 2014). Where there is no disputed issue of fact, a hearing is not necessary.

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that no "action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Furthermore, exhaustion of available administrative remedies must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

As an inmate in the custody of IDOC, Plaintiff was required to follow the grievance procedure laid out in the Illinois Administrative Code ("grievance procedures"). 20 ILL. ADMIN.

[2] The Court's ability to conduct *Pavey* hearings for evidentiary disputes on exhaustion was altered slightly by the Supreme Court's holding in *Perttu v. Richards*, 605 U.S. 460 (2025) (holding that if a factual dispute on exhaustion is intertwined with a factual dispute that goes to the merits of the underlying substantive claim, then a jury trial is required on the intertwined issue(s)). In the present case, there is no *Perttu* intertwinement issue.

CODE § 504.800, *et seq*. The grievance procedures direct an inmate is to file a grievance first with the Counselor within sixty days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> [C]ontain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are sent to a Grievance Officer, and then to the Chief Administrative Officer. *See* 20 ILL. ADMIN. CODE §§ 504.820(a), 504.830. The Chief Administrative Officer reviews the findings and recommendations of the Grievance Officer and issues a written decision to the inmate. 20 ILL. ADMIN. CODE §504.830(e). If the inmate is not satisfied with the response, he can file an appeal with the Administrative Review Board (ARB). *See* 20 ILL. ADMIN. CODE § 504.850(a). Only after a grievance is reviewed by the ARB is it deemed exhausted. *See Pozo*, 286 F.3d at 1023–24.

**GRIEVANCES**

Based on the briefings, there are three grievances at issue: Grievance #K4-0624-2761, Grievance #K4-0924-4235, and Grievance #K5-0325-1020. (Doc. 39, p. 3-5; Doc. 41, p. 1). The Court will take each one in turn.

## I. Grievance #K4-0624-2761

In Emergency Grievance #K4-0624-2761, dated June 19, 2024, Plaintiff asserts that on February 15, 2024, he ate chicken and "consumed a bug." (Doc. 39-2, p. 3). He describes being escorted to the healthcare unit where he was examined by two nurses and told that nothing was wrong with him. Plaintiff states that he was then taken to segregation and placed on crisis watch for thirty days. (*Id.*). He complains that during those thirty days he was not seen by a nurse or

doctor for his medical issues. (*Id.* at p. 4). Plaintiff writes that he has ongoing stomach pain, his throat burns, he is losing weight, and he is seeing blood in his stool. (*Id.* at p. 3-4). Plaintiff grieves that he previously submitted a grievance requesting medical care on either March 7 or April 25 (it is unclear), but he did not receive a receipt or response. (*Id.* at p. 4). He states he has a tapeworm inside him, and he fears dying in his cell without any proper medical treatment. (*Id.*). Plaintiff also describes being threatened by Correctional Officer Slinger while in the healthcare unit. (*Id.*). Plaintiff requests to be sent to the hospital and properly examined so that his medical issues can be solved. (*Id.* at p. 3-4).

The Chief Administrative Officer declined to consider the grievance as an emergency, and the grievance was resubmitted to the Counselor for first level review. (Doc. 39-2, p. 3). The Counselor reviewed the grievance on June 26, 2024, and determined that the grievance as "out of time frame." (*Id.*). The Grievance Officer also recommended that the denial of the grievance as untimely, as it was not filed within 60 days after the discovery of the incident. (*Id.* at p. 1). The Chief Administrative Officer concurred, and Plaintiff appealed the grievance. (*Id.* at p. 1; Doc. 39-3, p. 1, 2). The ARB determined that the grievance was not timely filed within the required 60-day time frame. (*Id.*).

In his response and supplement, Plaintiff expresses difficulty in receiving a copy of this grievance. Plaintiff states that he filed his only copy along with his Complaint, and he does not have additional copies. (Doc. 41, p. 1). He, therefore, is unsure of how he can show proof that he properly filed this grievance. (*Id.*). However, he later writes that he received a copy of Grievance #K4-0624-276 and other documents after writing a letter to the Master File Summary Office. (Doc. 42, p. 2). The issue with copies appears to have rectified itself, and the Court finds that no further action is needed. Plaintiff ultimately argues in his filings that Grievance #K4-0624-2761 contains

sufficient information to meet the grievance requirements because the grievance was timely filed, mentions correctional officers by name, and details "his status about being assaulted, broken property, and lack of proper medical treatment." (Doc. 41, p. 1; Doc. 42, p. 2)

The Court agrees that Plaintiff followed grievance procedures and completed the full three-stage process for Grievance #K4-0624-2761 prior to initiating this lawsuit. As Defendants argue, however, the grievance fails to sufficiently describe their conduct or the incidents alleged in the Complaint. (*See* Doc. 39, p. 8-11). The primary purpose of exhaustion "is to alert the state to the problem and invite corrective action," *Turley v. Rednour*, 729 F.3d 645, 649–50 (7th Cir. 2013) (internal citations and quotations omitted), and inmates must exhaust according to prison rules. *See Pozo*, 286 F.3d at 1025. As discussed above, the Illinois Administrative Code instructs that a grievance should include "factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). These instructions are also included on the grievance form used by Plaintiff. Although Plaintiff is not required to specifically name Defendants, he must comply with the Illinois grievance process and grieve the issues with sufficient particularity. *See Santiago v. Anderson*, 496 F. App'x 630, 637 (7th Cir. 2012) ("Since May 2003 the grievance procedures applicable to Illinois prisons have included a particularity requirement[.]").

The details of Grievance #K4-0624-2761 do not alert prison officials of Defendants' misconduct in relation to Plaintiff's requests for medical treatment and allegations of excessive force, nor does it comply with the Illinois Administrative Code and grieve the issues with sufficient particularity. The grievance makes clear that Plaintiff has not received medical care for ongoing intestinal issues believed to be caused by a tapeworm, but he does not attribute the denial of

medical care to any correctional officers while he was in East Cell house and on suicide watch for a second time in April 2024. He states that he was not treated at the healthcare unit initially after ingesting a tapeworm, not visited by a nurse or doctor once he was placed in segregation in February, and that he did not receive responses to one, maybe two, grievances filed. Nothing in the grievance notifies prison officials that once Plaintiff was placed on suicide watch for a second time in April (1) his requests for medical care were ignored by Hart, Kitchen, and Harrison or any unidentified correctional officer (Counts 1 and 2); and (2) excessive force was used against him and he was denied medical care for his injuries because of his ongoing medical complaints (Counts 3, 4, 5). Accordingly, Grievance #K4-0624-2761 cannot serve to exhaust Plaintiff's claims in this case.[3]

**II. Grievance #K4-0924-4235**

Plaintiff submitted Emergency Grievance #K4-0924-4235 on September 1, 2024. (Doc. 39-2, p. 10). In the grievance, Plaintiff grieves that on April 11, 2024, he was having stomach pains, coughing, and spitting up blood from a tapeworm he contracted when he ate chicken on February 15, 2024. (*Id.*). He asserts he requested medical attention and was told by an unidentified person that "if [he] die[d] then [he] will be seen by a med tech." (*Id.*). Plaintiff also states that he requested medical attention from Sergeant Harrison but "received nothing." (*Id.* at p. 11). He writes that Harrison and Correctional Officer Sluther stood at his cell door and watched him swallow two nail clippers and a cable splitter. (*Id.*). Plaintiff states that he "exchanged words" with Harrison and Sluther and that they walked away from the cell without helping him. (*Id.*). Plaintiff describes setting himself on fire when the nurse passed by his cell without stopping in order to receive

[3] Because the Court finds that Grievance #K4-0624-2761 does not grieve Plaintiff's claims against Defendants, the Court will not address Defendants' arguments that the grievance was untimely submitted, and therefore, procedurally defective. (*See* Doc. 39, p. 11-12).

medical attention for the tapeworm. (*Id.*). Plaintiff states that he was escorted to the healthcare unit and then placed on crisis watch for thirty-one days. (*Id.*). He complains about the conditions of his cell, the destruction and loss of his property, and that he received a disciplinary ticket for arson. (*Id.*). He requests medical attention from an outside doctor and for his television and fan to be replaced or in the alternative, monetary reimbursement. (*Id.* at p. 10).

On September 9, 2024, the Chief Administrative Officer deemed the grievance not an emergency. (Doc. 39-2, p. 10). The Counselor reviewed the grievance on September 13, 2024, and recorded contacting the property department concerning Plaintiff's claims that his property had been destroyed while he was in segregation. (*Id.*). The Counselor notes that Plaintiff is recorded as having a television and two fans but nothing on file indicates that the property was destroyed. (*Id.*). After the review by the Counselor on September 13, 2024, the grievance tracking chart does not indicate further action taken on Grievance #K4-0924-4235. (Doc. 39-4, p. 5). However, according to a Counseling Summary submitted by Plaintiff, which is dated October 11, 2024, the grievance was received and "pending Healthcare review." (Doc. 42, p. 5). The grievance itself is stamped with the date July 7, 2025, indicating that the grievance was received by the Grievance Officer for second level review. (Doc. 39, p. 4; 39-2, p. 10). As of November 6, 2025, the Grievance Officer had still not reviewed the grievance. (Doc. 39, p. 4) (citing Doc. 39-4, p. 5).

As to Defendant Harrison, it is not disputed that Grievance #K4-0924-4235 contains sufficient details to grieve Plaintiff's Eighth Amendment claim against him. (Doc. 39, p. 10). Defendants, however, assert that the grievance is untimely, as it was filed on September 1, 2024, passed the sixty-day deadline. (*Id.*). Defendants also argue that Plaintiff filed his Complaint prematurely before he fully exhausted this grievance. (*Id.*). These arguments are not well taken.

Even though Grievance #K4-0924-4235 was filed more than sixty days after Harrison's

alleged conduct, IDOC can excuse a prisoner's noncompliance and review the grievance on the merits. *See Dole*, 438 F.3d at 809; 20 ILL. ADMIN. CODE §508.810(a) (allowing a grievance officer to consider an untimely grievance for good cause). The Seventh Circuit has held that a "procedural shortcoming like failing to follow the prison's time deadlines amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (quoting *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005)). Here, there is no indication that grievance officials considered the grievance procedurally deficient. The record indicates that prior to Grievance #K4-0924-4235 stalling out at second level review, officials were looking into the merits of Plaintiff's allegations. The Counselor records contacting the property department (Doc. 39-2, p. 10), and the Counseling Summary Report indicates that the grievance had been sent to the healthcare unit for review .(Doc. 42, p. 5). Because nothing in the record shows that Grievance #K4-0924-4235 was rejected at the institutional level on procedural grounds. In fact, there is no record of Plaintiff receiving a response from the Grievance Officer at all. Thus, Defendants cannot now rely on the failure to exhaust defense due to untimeliness.

Which leads to the next issue with Grievance #K4-0924-4235, whether Plaintiff filed this case too soon before completing the grievance process. Defendants argue that the grievance cannot serve to exhaust Plaintiff's claims against Harrison because he filed this lawsuit before he received a response from the Grievance Officer and Chief Administrative Officer and a final decision from the ARB. (Doc. 39, p. 10). Plaintiff, however, is not required to wait indefinitely for a response, and "an administrative scheme can be 'unavailable' to a prisoner when a prison fails to respond to a prisoner's grievance." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020); *Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response). There is no record of Plaintiff

ever receiving a response to Grievance #K4-0924-4235 from the Grievance Officer and the Chief Administrative Officer. At the time Defendants filed their Motion for Summary Judgment, over *a year* had passed since he submitted Grievance #K4-0924-4235, and the grievance still had not been fully processed at the institutional level. Defendants do not provide justification for the delay in processing Grievance #K4-0924-4235 or any evidence that the process remained available to Plaintiff. *see Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 331 (7th Cir. 2019) (finding the process was unavailable when the plaintiff "had no reason to believe that anyone was looking into his grievance"). When the availability of the grievance process is disputed, "Defendants bear the burden of proving that an administrative remedy was available and that the plaintiff failed to pursue it." *Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022) (citations omitted). Defendants have failed to meet that burden, and it is clear "no further administrative avenue was opened to [*Ferreyra v. Barr*, 962 F.3d 331, 331 (7th Cir. 2020). Plaintiff's claim against Harrison (Count 2) survives the Motion for Summary Judgment.

The same cannot be said for Plaintiff's claims against Defendants Hart and Kitchen. A lack of response does not automatically render any grievance Plaintiff filed retrospectively adequate; it merely excuses Plaintiff's failure to take any further steps in the grievance process. As the Ninth Circuit has articulated, "a prisoner must show that he attempted to exhaust his administrative remedies but was thwarted…In particular, [he] must establish…that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court…" *Sapp v. Kimbrell*, 623 F.3d 813, 823–824 (9th Cir. 2010). Judges in this district have found the Ninth Circuit's rationale in *Sapp* to be persuasive and have adopted it. *See Cortez v. Wexford Health Source, Inc.*, No. 3:19-CV-01238-SMY-MAB, 2022 WL 802282, at *6 (S.D. Ill. Feb. 23, 2022) (collecting cases).

As with Grievance #K4-0624-2761, the content of Grievance #K4-0924-4235 does not cover the allegations against Hart and Kitchen. Plaintiff does not discuss his interactions with either Defendant or another unidentified correctional officer following his second placement on suicide watch, and the grievance is void of allegations that he was assaulted by correctional officers and injured. Plaintiff's general statement that at the time he was released from segregation he still had not "received proper medical attention," (Doc. 39-2, p. 11), does not meet the particularity requirement of the grievance procedures by providing a "description of what happened, when and where it happened, and name or identifying information of each person involved." 20 ILL. ADMIN. CODE 504.810(c). Nor does the statement comport with the purpose of exhaustion, which is to give the prison "notice of, and an opportunity to correct, a problem." *Turley*, 729 F.3d at 650. Thus, Grievance #K4-0924-4235 could not have sufficed to exhaust Plaintiff's claims against Hart and Kitchen even if pursued through all levels of the grievance process.

**III. #K5-0325-1020**

The last relevant grievance is Emergency Grievance #K5-0325-1020, dated February 17, 2025. (Doc. 39-2, p. 8). Plaintiff filed this grievance after being transferred to Pontiac Correctional Center (Pontiac). (*Id.*). Again, Plaintiff explains that while he was housed at Menard, he consumed a bug when he ate chicken, and he was subsequently taken to crisis watch for two months due to mental health problems. (*Id.*). Plaintiff writes that while on crisis watch he did not have a bed or property, and he did not see a doctor or receive medical care. (*Id.* at p. 9). He states he saw Dr. Zarir that day at Pontiac, who told him that a test was performed "about the bug." (*Id.*). Plaintiff complains that medical staff use his mental health disorders against him, rather than treat his physical symptoms. (*Id.*). He asks to be treated by a real doctor and maintains that there is a bug in his bronchial tube, stomach, intestine, and colon. (*Id.*). Plaintiff states that he is hearing voices

telling him to harm himself in order to receive medical attention. (*Id.*). He asks to visit the emergency room to have the bug removed. (*Id.* at p. 8). Plaintiff asserts he is in pain. (*Id.*).

On March 26, 2025, the Chief Administrator deemed the grievance an emergency. (Doc. 39-2, p. 8). The Grievance Officer reviewed the grievance on March 31, 2025, and recommended no further action be taken. (*Id.* at p. 6). After contacting the healthcare unit and a mental health social worker, the Grievance Officer wrote that Plaintiff had been tested for a tapeworm, and all the tests have been negative. (*Id.*). The Grievance Officer also recorded that Plaintiff is seen every thirty days by a mental health professional and a psychiatrist, and his medication was recently adjusted. (*Id.*). The Chief Administrative Officer concurred with the recommendation on April 2, 2025. (*Id.*).

Again, the Court finds that this grievance cannot serve to exhaust Plaintiff's claims in this case. Not only does the grievance not sufficiently describe the claims Plaintiff is pursuing in this case, but there is also no record that Plaintiff appealed this grievance with the ARB. Even if he had submitted the grievance to the ARB, he would have received the final determination until after he initiated this lawsuit on March 24, 2025, (Doc. 1), since the Chief Administrative Officer did not issue his determination until April 2, 2025. Because Plaintiff filed this case before receiving a response from the Chief Administrative Officer and did not appeal the grievance to the ARB, Grievance #K5-0325-1020 cannot serve to exhaust his claims in this case.

## Disposition

For the reasons provided, the Motion for Summary Judgment filed by Defendants Hart, Kitchen, and Harrison is **GRANTED in part** and **DENIED in part**. (Doc. 39).

The claims against Defendants Hart and Kitchen (Counts 1, 3, 4, and 5) are **DISMISSED without prejudice** for Plaintiff's failure to exhaust. The Clerk of Court is **DIRECTED** to

terminate Hart and Kitchen as parties on the docket and enter judgment accordingly at the end of this litigation. Plaintiff is now proceeding on the remaining count:

**Count 2:** Eighth Amendment claim against Harrison for deliberate indifference to Plaintiff's difficulty breathing on April 11, 2024, and ongoing intestinal illness and associated symptoms.

The stay on merits discovery is **LIFTED**. The parties can proceed with discovery on the merits. A new scheduling order will be entered by separate order.

**IT IS SO ORDERED.**

**DATED: September 16, 2026**

**STEPHEN P. MCGLYNN**
**United States District Judge**